UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LESLIE B.,                                          )
                                                    )
      Plaintiff                                )
                                                    )
v.                                                  )        1:19-cv-00464-GZS
                                                    )
ANDREW M. SAUL, Commissioner of                     )
Social Security,                                    )
                                                    )
      Defendant                                )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff had severe impairments, but retained the functional capacity to perform substantial gainful activity from her alleged onset date through November 2, 2018, but after that date, that Plaintiff became disabled.  Defendant, therefore, partially denied Plaintiff's request for disability benefits.  Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the November 15, 2018 decision of the

Administrative Law Judge.  (ALJ Decision, ECF No. 9-2.)[1]  The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of asthma, chronic obstructive pulmonary disease, obesity, and anxiety disorder. (R. 20.)  The ALJ also found that Plaintiff's claims of depression and urinary tract infection/urinary stress incontinence were not medically determinable impairments.  (R. 20.)  Based on her review of the record, the ALJ determined that prior to the date she became disabled, Plaintiff had the residual functional capacity (RFC) to perform sedentary work, subject to exertional and environmental limitations. (R. 23.)

The ALJ concluded that during the relevant period, Plaintiff was unable to perform her past relevant work as a certified nursing assistant.  (R. 32.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ also determined that jobs exist in significant numbers in the national economy that Plaintiff was able to perform, including the jobs of office helper, inspector and mail sorter.  (R. 20-21.)

Applying the age categories non-mechanically and considering "additional adversities in the case," the ALJ found that Plaintiff was an individual closely approaching advanced age and found her disabled as of November 3, 2018.  (R. 32.)  The ALJ denied Plaintiff's SSDI claim in its entirety, as well as her claim for SSI benefits for the period between February 28, 2017 and November 3, 2018.

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred at Step 2 when she determined that Plaintiff's urinary tract infections and chronic urinary incontinence were not severe impairments. Plaintiff further argues the ALJ erred because she failed to account for Plaintiff's need to use the restroom twice per hour and because she disregarded the vocational expert's testimony that the necessary bathroom restriction would preclude her from employment. Plaintiff contends the record supports a finding that she was disabled as of August 19, 2016.

### A.  Step 2

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the

impairments meet the durational requirement of the Social Security Act.  20 C.F.R. § 416.920(a)(4)(ii).  The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims.  *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986).  An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85–28).  In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis.  *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521.  *See also* Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted).  A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity.  *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014).  Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of

medication and other forms of treatment.  *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.  In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe."   20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec.*, 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

The ALJ found that Plaintiff's stress incontinence and urinary tract infections did not satisfy the frequency, durational or severity requirements necessary to constitute a severe medically determinable impairment.  (R. 20.)  Plaintiff periodically complained of urinary-related symptoms for several years.  For instance, Plaintiff reported symptoms related to urinary tract issues to FNP Kelcy Wiley, her primary care provider, in May and June of 2015, September and October 2016, April, June and December 2017, and January, April and June of 2018.  (R. 614, 775, 761, 862, 1005, 1019, 1033, 1043, 1060, 1078, 1088.)   The record also includes medical reports and lab results that confirm or are consistent with the urinary-related difficulties that Plaintiff reported. (*See e.g.*, R. 454, 714, 888, 1088.)

Although during appointments in August and December 2016, May, July, September, October, and November 2017, and February, May and July 2018, Plaintiff either did not mention or denied she was experiencing a urinary-related problem, (R. 747, 781, 785, 788, 747, 982-89, 990-97, 998, 1004, 1012-18, 1026-32, 1052-59, 1069-77, 1095-1102), a condition that generates intermittent, rather than continuous, symptoms can support a severe impairment finding.  As this Court has explained:

> A condition need not be "severe" or symptomatic day in and day out for twelve straight months to meet the durational requirement. Rather, as the Supreme Court … observed in *Barnhart v. Walton*, 122 S. Ct. 1265, 1270 (2002), a claimant must show that his or her impairment has lasted (or is expected to last) for twelve months and, ultimately (for purpose of being found disabled and hence entitled to benefits), that it is severe enough to prevent him or her from engaging in substantial gainful activity for at least twelve months.

*Maddocks v. Astrue*, No. 1:11-cv-461-NT, 2012 WL 5255197, at *4 (D. Me. Sept. 30, 2012) (Report and Recommended Decision), 2012 WL 5252257 (D. Me. Oct. 23, 2012) (Order Adopting Recommended Decision) (quoting *Green v. Barnhart*, No. 03-36-B-W, 2003 WL 2291199, at *4 (D. Me. Dec. 15, 2003)). On this record, to the extent the ALJ concluded that the condition was not severe because it did not satisfy the durational requirement, the ALJ erred.

The ALJ, however, did not rely exclusively on the durational requirement when she determined that the condition did not constitute a severe impairment. The ALJ also noted the frequency and the severity of the condition. The ALJ, with citation to the record, supportably relied upon the nature of the treatment and Plaintiff's lack of follow-up on treatment recommendations to conclude the condition was not severe. [2]

Even if the ALJ erred at Step 2, remand is only appropriate when the claimant can

---

[2] The ALJ not only assessed the severity of the condition as part of her Step 2 analysis (R. 20), but in her RFC assessment, the ALJ reiterated her finding that the condition was not severe and in support of that conclusion, noted the lack of ongoing treatment for incontinence beyond using pads, taking over-the-counter cranberry supplements and decreased soda intake; and that Plaintiff's declination of referrals was not entirely explained by a lack of insurance. (R. 30.) As to the last point, after Plaintiff eventually saw a urologist (Griffith Batstone, M.D.), she stopped taking the medication the doctor prescribed because of side effects, declined an alternative medication because of side effects, denied any frequency or troublesome leakage, and declined further treatment. (R. 617, 620, 623.)

demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).  Here, Plaintiff has not demonstrated that the RFC, which provided for sedentary work with limitations, would not accommodate Plaintiff's urinary condition.  As explained below, Plaintiff's contention that the RFC should have included two bathroom breaks each hour, which Plaintiff contends would have required a finding of disabled, is not supported by the medical evidence and the ALJ was not required to incorporate the restriction into the RFC.

### B.  RFC Finding

The ALJ found that Plaintiff could perform sedentary work during the relevant time period, with certain limitations.  (R. 23.)  As noted above, Plaintiff asserts that the ALJ erred in failing to account in the RFC assessment for Plaintiff's testimony that she needs to use the restroom twice per hour.

To establish harmful error, Plaintiff must establish that she was more limited than the ALJ determined.  *Jones v. Astrue*, No 1:10-cv-00179-JAW, 2011 WL 1253891, at *6 (D. Me. Mar. 30, 2011).  Plaintiff contends that the medical record, the statements of FNP

Wiley, and Plaintiff's testimony at the hearing[3] support her claim that she needed to use the restroom twice per hour.  Plaintiff argues, therefore, that the vocational expert's testimony that two bathroom breaks per hour "would be unacceptable to employers" (R. 67) requires a finding that Plaintiff was disabled during the relevant time period.

"In order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities."  *Arocho v. Sec'y of Health & Human Servs*., 670 F.2d 374, 375 (1st Cir. 1982).  FNP Wiley, the medical expert upon whom Plaintiff relies, did not testify that Plaintiff required two bathroom breaks each hour.  Instead, FNP Wiley opined that Plaintiff would need to take unscheduled breaks "daily – likely hourly," lasting "1-5 minutes, but up to 10 min[utes]" due to pain/paresthesias, numbness, adverse effects of medication, shortness of breath, and anxiety, as well as incontinence. (R. 1121.)  FNP Wiley's testimony can fairly be construed that due to all her conditions and symptoms, including incontinence, Plaintiff likely would have to have one break each hour.  The record thus lacks reliable medical opinion to support the premise of the hypothetical question posed to the vocational expert.

Even if the testimony of FNP Wiley could be construed to support Plaintiff's contention, the ALJ supportably determined that FNP Wiley's opinions should be afforded "minimal weight." (R. 29-30.)   Although a nurse practitioner was not an "acceptable

---

[3] Plaintiff testified at hearing that she believes she goes to the bathroom "probably two times an hour."  (R. 59.)  She also testified that she estimates that she changes pads "probably 12 times a day …..  Every time I go to the bathroom they're wet."  (R. 60.)

medical source" and, therefore, was not a "treating source" whose opinion benefits from the "controlling weight" presumption, the ALJ could not disregard FNP Wiley's statement. The ALJ, however, was not required to give "good reasons" for rejecting the statement as is necessary when an ALJ rejects a treatment source statement. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7) (recognizing Licensed Advanced Practice Registered Nurse as an acceptable medical source only for claims filed on or after March 27, 2017); *Hinckley v. Astrue*, No. 2:10-CV-197-GZS, 2011 WL 1226055, at \*4 (D. Me. Mar. 29, 2011) *report and recommendation adopted,* 2011 WL 1560001 (D. Me. Apr. 25, 2011); *see also Tucker v. Berryhill*, No. 2:16-cv-00301-JHR, 2017 WL 2539750, at \*6 (D. Me. June 11, 2017) (ALJ may give little weight to an opinion "in part on the basis that it came from a non-acceptable medical source"). The ALJ nevertheless provided a good reason, supportable by the record, when she explained that she afforded the statement minimal weight, in part, because FNP Wiley "relied heavily upon [Plaintiff's] subjective report of her symptoms and limitations, which … lack reliability." (R. 31.) *See Ferrante v. Astrue*, 765 F. Supp. 2d 206, 210 (D. Me. 2010) ("a plaintiff's subjective reports are insufficient to establish the existence of an impairment.").

Plaintiff asserts that the ALJ implicitly rejected the state agency medical experts' opinions, to which she otherwise gave weight, because neither deemed Plaintiff's urinary tract issues as medically determinable impairments. Plaintiff argues that without an opinion to the contrary, the ALJ had to adopt the diagnoses and findings of Plaintiff's providers. The agency experts acknowledged Plaintiff's complaints and treatment for

urinary incontinence (R. 97), but they did not include any related functional limitations. (R. 101-03, 135-37.)  The ALJ supportably found their assessments worthy of more weight. In any event, the ALJ's citation to the medical evidence to support her assessment of FNP Wiley's opinions is sufficient; "nothing further is required."  *Ferrante*, 755 F. Supp. 2d at 210.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of July, 2020.